The ERIE DOCK COMPANY, Plaintiff,

v.

ERIE LACKAWANNA RAILWAY COM-
PANY and Consolidated Rail
Corporation, Defendants.

Civ. A. No. 85–11.

Special Court,
Regional Rail Reorganization Act.

May 16, 1986.

Eric H. Zagrans, Ann K. Sullivan Arter & Hadden, Cleveland, Ohio, for plaintiff.

Harry G. Silleck, Jr., John L. Altieri, Jr., Sara E. Johnson, Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, for Erie Lackawanna RW Co.

*Memorandum and Order on Motion of Defendant, Erie Lackawanna, Inc., to Dismiss Complaint on Grounds of Laches and Estoppel or, in the Alternative, for Summary Judgment*

Before WISDOM, Presiding Judge, and THOMSEN and GASCH, Judges.*

This is an action for a declaratory judgment by The Erie Dock Company (Erie Dock) against Erie Lackawanna Railway Company (EL) and Consolidated Rail Corporation (Conrail). Jurisdiction is predicated upon § 209(e)(2) of the Regional Rail Reorganization Act of 1973, as amended (the "Act").

The action, brought on August 16, 1985, relates to an iron ore receiving dock and wharf facility known as the Nypano Dock,

---

* This matter was fully briefed and submitted for decision without oral argument on January 27, 1986. This memorandum order was written, but not signed, by Presiding Judge Henry J. Friendly prior to his death on March 11, 1986. Pursuant to § 209(b) of the Regional Rail Reorganization Act of 1973, the Judicial Panel on Multidistrict Litigation appointed Judge John

Minor Wisdom Presiding Judge of the General Panel and appointed Judge Oliver Gasch to the General Panel. Judge Gasch continues to serve as Presiding Judge of the Section 1152 Panel. Judges Wisdom, Thomsen and Gasch have considered Judge Friendly's proposed memorandum order and have fully concurred and adopted it as the decision of the court.

located on the Cuyahoga River in Cleveland, Ohio. The facility has long been owned by EL and its predecessors and operated by Erie Dock under a contract dated May 1, 1912, known as the Stevedore Agreement. In a 1950 supplement, Erie Dock and EL agreed that it was necessary for Erie Dock to put into effect a pension plan for its employees at the facility. EL agreed to pay Erie Dock each month all amounts paid by Erie Dock under an unfunded, "pay-as-you-go" pension plan, which it had adopted with EL's approval. EL also promised that if the Stevedore Agreement was terminated for any reason, it would indemnify and hold harmless Erie Dock from all future obligations under the plan. EL's contractual assumption of Erie Dock's liability under the plan was confirmed in subsequent supplemental agreements in 1960 and 1972.

The Final System Plan (FSP) provided for the transfer of the facility to Conrail, and also provided for the transfer of "all rights and obligations under executory contracts and agreements relating directly or indirectly to rail service," FSP, Vol. I, p. 253. On March 31, 1976, pursuant to § 303(b) of the Act and this court's Order in Aid of Implementation of Conveyance Orders entered on March 23, 1976, EL executed a Bill of Sale and Assignment which, *inter alia*, transferred title to the facility to Conrail. Schedule E of the Bill of Sale and Assignment transferred to Conrail the rights of EL to every contract to which EL was a party and was used or useful in rail service to be assumed by Conrail, and Conrail assumed future obligations under each such contract save for certain exceptions. One such exception, contained in subparagraph 19, was:

All employee pension benefit plans and other deferred compensation arrangements and all contracts and agreements relating thereto.

On May 27, 1976, Erie Dock filed a petition in this court, No. 76–5, against EL, Conrail and United States Railway Association (USRA) seeking a declaratory judgment that Conrail had become liable to honor EL's obligations under the Stevedore Agreement. The complaint alleged that Conrail, by letter dated April 28, 1976, had rejected the Stevedore Agreement "as being one which included an employee pension benefit plan for which Conrail would have been responsible" and was therefore within subparagraph 19. Possibly because the petition included matters other than the Erie Dock pension agreement, such as liability for Erie Dock's pre- and post-conveyance expenses in maintaining the facility, Conrail's answer stated "that upon reexamination of the exclusions set forth in Schedule E of the Assignment and Bill of Sale, it no longer takes the position that the agreement between Petitioner and [EL] was thereby excluded."

On April 18, 1980, the parties entered into a stipulation, approved by this court, dismissing Erie Dock's petition. The stipulation recited that Erie Dock, Conrail and USRA had now reached an agreement which included Erie Dock's giving Conrail a release and Conrail's making a payment to Erie Dock to resolve the matters sought to be adjudicated by Erie Dock's petition; accordingly all parties stipulated that the petition against Conrail be dismissed with prejudice. The stipulation recited, on the other hand, that Erie Dock and EL had reached no agreement on any claims Erie Dock might have against EL and that Erie Dock would press its claims against EL in the reorganization court. The stipulation provided that:

In the context of prosecuting its claims, Erie Dock may assert, *inter alia*, that the May 1, 1912 contract was not conveyed to Conrail. By the same token, [EL] may assert, by way of defense or otherwise, that the May 1, 1912 contract was conveyed to Conrail. In agreeing to dismiss without prejudice the Special Court action between Erie Dock and [EL], Erie Dock expressly reserves all of its claims, [EL] expressly reserves all of its defenses to any claims of Erie Dock and any and all crossclaims or third-party claims against any other party, and Conrail expressly reserves all of its defenses to any and all claims of [EL]. Thus, in

executing this Stipulation, Erie Dock and [EL], and Conrail and [EL] do not intend to alter or otherwise affect in any manner whatsoever the positions which existed prior to execution of this Stipulation. Accordingly, Erie Dock's claim against EL was dismissed without prejudice.

As a prelude to prosecution of its claims against EL in the reorganization proceeding, Erie Dock now asks this court, in the exercise of our exclusive jurisdiction under § 209(e)(2) of the Act, to declare that Conrail validly refused to assume EL's executory obligations under the Stevedore Agreement for reimbursement of pension payments made by Erie Dock, that the Stevedore Agreement terminated upon the conveyance of the Nypano Dock facility to Conrail, and that EL must indemnify Erie Dock in accordance with the terms of the Stevedore Agreement and agency law.

On October 4, 1985, EL moved to dismiss Erie Dock's complaint as barred by the equitable doctrines of laches and estoppel. We scheduled argument on the motion for January 21, 1986, but adjourned this at the request and for the convenience of the attorneys; later the parties agreed to have the motion decided without oral argument.

■ We see no force in EL's claim of estoppel, which is predicated on Erie Dock's having taken the position, in its 1976 petition in this court, that the Stevedore Agreement was assigned to Conrail, whereas Erie Dock now asserts that it has remained with EL. EL was a party to the stipulation whereby Erie Dock's claim against Conrail was dismissed with prejudice and Erie Dock was left free to pursue its claims against EL. EL cannot be heard to complain of conduct by Erie Dock to which it agreed.

■ EL's claim of laches, on the basis that Erie Dock delayed in bringing this action for five years between the dismissal of its 1976 petition and the filing of this one, is another matter. Apart from other points raised by Erie Dock (including the argument that intermittent settlement negotiations between 1980 and 1985 preclude any finding of inexcusable delay), EL, in order to prevail on the ground of laches, has the burden of establishing prejudice by showing, in such detail as is practicable, how evidence lost as a result of the delay would have avoided a construction of the relevant documents that is unfavorable to it. If the trial should reveal that the relevant documents are so clear that resort to extrinsic evidence would not be permitted or would be inconsequential, then EL could not have been prejudiced by the delay. In fact, EL declares it "has no doubt that a plain reading of the Bill of Sale and Assignment mandates a declaration that the [Stevedore] Agreement was conveyed to Conrail." Reply Memorandum at 10. Furthermore, EL did not attempt to make any particularized demonstration of how the lost evidence would advance EL's case until its Reply Memorandum, with which it submitted affidavits for the first time. At the moment we simply have no idea how material the allegedly lost evidence is. The court prefers not to pass on EL's claim of laches, with its devastating effect on a claim which the parties have known about all these years, until it has had the benefit of an evidentiary hearing with respect to the merits and a detailed proffer of what EL would expect to have been able to prove by witnesses or documents which have now become unavailable. This will permit us to see how the lost mosaics would fit together with the ones still remaining.

EL's motion to dismiss on the ground of estoppel is therefore denied. Its motion to dismiss on the ground of laches is denied without prejudice to consideration of that issue on a full presentation at the trial. The parties are directed to confer promptly with the court's executive attorney concerning further procedures.

It is so ordered.