The **ERIE DOCK COMPANY**, Plaintiff,

v.

**ERIE LACKAWANNA, INC., Defendant.**

No. 85–11.

Special Court,
Regional Rail Reorganization Act.

May 5, 1988.

Eric H. Zagrans, Irene C. Keyese–Walker, Cleveland, Ohio, Roger P. Furey, Washington, D.C. (Arter & Hadden, Cleveland, Ohio, of counsel), for Erie Dock Co.

John L. Altieri Jr., Peter J. Venaglia, (Mudge, Rose, Gutherie, Alexander & Ferdon, New York City, of counsel), for Erie Lackawanna, Inc.

Before WISDOM, Presiding Judge, and GASCH and GREEN, Judges.

**WISDOM, Presiding Judge:**

This case is about an asset nobody wants: an executory contract that carries with it an obligation to indemnify the Erie Dock Company for any pension payments it makes to its retired employees. Erie Dock is suing Erie Lackawanna, Inc., successor in interest to the Erie Lackawanna Railway Company, the original indemnitor under the contract and a "railroad in reorganization" within the meaning of the Regional Rail Reorganization Act of 1973 (the "Act"). Erie Lackawanna maintains that a Bill of Sale and Assignment dated March 31, 1976, (the "Bill of Sale") conveyed the executory contract to Conrail. Erie Dock has settled with Conrail and asks the Court to declare that the contract and its attendant obligations remain with Erie Lackawanna. Because we conclude that the plain language of the Bill of Sale excepts the executory contract in question from the general transfer of assets to Conrail, we hold in favor of Erie Dock.

### I.

Until 1976, Erie Lackawanna owned and operated the Nypano iron ore receiving dock on the Cuyahoga River. For more than sixty years, Erie Dock had provided stevedoring services for Erie Lackawanna at the Nypano dock under a contract known as "The Stevedore Agreement". In a 1950 supplement to the original contract, Erie Lackawanna agreed to reimburse Erie Dock each month for money paid by Erie Dock to its employees under an unfunded, pay-as-you-go pension plan. Erie Lackawanna also promised to indemnify Erie Dock if the Stevedore Agreement were ever terminated for any reason. This promise was reaffirmed in later supplemental agreements signed in 1960 and 1972.

The parties agree that on March 31, 1976, Erie Lackawanna transferred the Nypano dock itself to Conrail. The parties also agree that the Stevedore Agreement is an executory contract governed by Schedule E of the Bill of Sale. Under Schedule E, Conrail assumed all executory contracts that were "used or useful in the provision of rail services"—with certain exceptions. The exception that we find determinative in this case is contained in paragraph 19 of Schedule E. That paragraph excludes from the transfer "[a]ll employee pension benefit plans and other deferred compensation arrangements and all contracts and agreements relating thereto". Erie Dock relies upon this language to argue that the Stevedore Agreement was *not* conveyed to Conrail.

The negotiations that led to the Bill of Sale were hurried and at times confused. Erie Lackawanna, of course, transferred thousands of assets to Conrail. As Erie Dock tried to keep abreast of the status of the Nypano dock, it received inconsistent signals from various Conrail officials. There is evidence that Conrail intended to do business with Erie Dock, but it is never entirely clear whether this would involve a new contract or an assumption of the Stevedore Agreement. Sporadic negotiations between Conrail and Erie Dock continued into the summer of 1976, but Conrail never agreed to pay the tonnage rates that Erie Dock demanded.

In May 1976, Erie Dock filed No. 76–5 in this Court against both Conrail and Erie Lackawanna. One or the other would have to honor the pension reimbursement provisions of the Stevedore Agreement; understandably enough, Erie Dock chose to pursue Conrail first.[1] Erie Dock asked this Court to declare that Conrail acquired the Stevedore Agreement when it acquired the dock. Conrail at first denied, later admitted, and then offered to deny again that it had assumed the Stevedore Agreement. The United States Railway Association, an additional defendant, has consistently maintained that the Stevedore Agreement was never transferred to Conrail.

In 1980, the parties signed a stipulation that led to the dismissal of No. 76–5—with prejudice with respect to Conrail and USRA, and without prejudice with respect

---

1. By this time the Erie Lackawanna Railway Co. was in bankruptcy proceedings. On June 21, 1976, Erie Dock filed a claim with Erie Lacka- wanna's trustees for reimbursement of all Erie Dock's pension obligations. Erie Dock has esti- mated the value of this claim at about $850,000.

to Erie Lackawanna. The parties to the stipulation agreed that Erie Dock "may assert, *inter alia,* that the [Stevedore Agreement] was not conveyed to Conrail". In 1985, roughly nine years after terminating the Stevedore Agreement, Erie Dock filed the present action against Erie Lackawanna.

## II.

In 1986 this Court decided that the 1980 stipulation constituted a waiver of Erie Lackawanna's estoppel defense. The Court ruled that Erie Lackawanna "cannot be heard to complain of conduct by Erie Dock to which it agreed".[2] At the time we noted on the question of laches that if the Bill of Sale is clear enough to stand by itself, without the use of extrinsic evidence, then Erie Lackawanna "could not have been prejudiced by the delay".[3] Today, in view of the discussion below, we reject Erie Lackawanna's laches defense.

## III.

■■■ Erie Dock presents three textual arguments for ruling that the Stevedore Agreement was not conveyed to Conrail. The first is that the Stevedore Agreement was not "used or useful in the provision of rail services". Next, Erie Dock contends that the Stevedore Agreement was kept out of the Bill of Sale by language in Schedule E providing that Conrail would assume no liabilities that accrued before the transfer date. We do not rule upon either of these propositions because Erie Dock's final argument is sufficient to decide the case.

As noted above, under Paragraph 19 of Schedule E, "[a]ll employee pension benefit plans and other deferred compensation arrangements and all contracts and agreements relating thereto" are "expressly reserved and excepted from conveyance". Erie Dock contends that the Stevedore

Agreement includes and therefore "relates to" a "deferred compensation arrangement". For this reason, Erie Dock concludes, the Stevedore Agreement was never conveyed to Conrail. We agree.

Erie Lackawanna offers two responses to this reading of paragraph 19. First, Erie Lackawanna contends that "employee" in the Bill of Sale refers *only* to Erie Lackawanna employees. This argument is said to derive from the doctrine of *in pari materia.* The Bill of Sale is an expression of legislative will, Erie Lackawanna reasons, and the term "employee pension benefit plans" in paragraph 19 should carry the same meaning it has in section 303(b)(6) of the Act. Only the employees of transferor railroads are covered by 303(b)(6). Therefore, the argument goes, only "Erie Lackawanna employee benefit plans" are excluded from the general conveyance of executory contracts in Schedule E of the Bill of Sale.

The second response is that the Stevedore Agreement is not a "pension benefit plan" at all. To except transfer of the entire Stevedore Agreement on the basis of the pension reimbursement guarantee would be, in Erie Lackawanna's view, to let the tail wag the dog. Any executory contract that happened to contain a pension reimbursement agreement would be excluded in its entirety. Erie Lackawanna characterizes this result as absurd.

These arguments share the same defect: they fail to give effect to the plain language of the Bill of Sale. An agreement that covers "each and every contract" to which Erie Lackawanna is a party, and refers to "*all* employee pension benefit plans" cannot be construed to exclude only "Erie Lackawanna employee pension benefit plans". But even if we assume that the drafters of paragraph 19 regarded "employee pension benefit plans" as a term of art, Erie Lackawanna's first argument ig-

---

**2.** *Erie Dock Co. v. Erie Lackawanna Ry. Co.,* 635 F.Supp. 875, 877 (Sp.Ct.R.R.R.A.1986). We decline to reconsider our ruling on estoppel. No part of Erie Dock's pleading in No. 76–5 could reasonably have caused Erie Lackawanna to conclude that it was "entirely out of the pic-

ture". Trial Memorandum of Erie Lackawanna at 3. We further note that Erie Dock never withdrew its pending claim against Erie Lackawanna in the separate bankruptcy proceedings.

**3.** *Id.*

nores the words "... and other deferred compensation arrangements". The language in paragraph 19 goes beyond the language in the Act, and we refuse to read it as meaning less than it says.

Similarly, Erie Lackawanna's suggestion that the drafters of paragraph 19 sought to exclude only "pure" pension agreements is inconsistent with the broad phrase "... and all contracts and agreements relating thereto". Erie Lackawanna does not deny that the pension reimbursement obligation was an important part of the Stevedore Agreement. It is worth noting that in parallel bills of sale involving other railroads, the USRA regularly assumed that stevedore agreements "relate to" deferred com-pensation arrangements.[4] We reach the same conclusion here.

## IV.

We declare that the Bill of Sale did not transfer the Stevedore Agreement to Conrail. No other issues raised by the parties are within our jurisdiction under Section 209(e)(2) of the Act.

---

**4.** For example, when Penn Central conveyed its executory contracts to Conrail, the bill of sale also contained a Schedule E with a paragraph 19 that excepted "employee pension benefit plans" from the conveyance. But in the Penn Central bill of sale, paragraph 19 *excluded* a stevedore agreement between Penn Central and the A & B Dock Company from the pension plan exception. In other words, the Penn Central bill of sale conveys the A & B Dock Stevedore Agreement to Conrail by *treating it as a pension plan* but then excepting it from the paragraph 19 exception. Erie Dock contends that this "exception from the exception" technique was frequently used when the USRA wished to convey a stevedore agreement to Conrail. Opening Brief of the Erie Dock Company at 30 n. 13.